Kenneth D. GIBSON, Appellant,

v.

KENTUCKY STATE UNIVERSITY, George W. Wilson, Ballard W. Cassady, Jr., John B. Clarke, Ethel McClendon, Elliott H. Marcus, Donna Moloney, Sue Stodgill, Barney Tucker and Luska J. Tywman, Individually and as Members of the Board of Regents of Kentucky State University; and Raymond Burse, President of Kentucky State University, Appellees.

No. 89-SC-673-DG.

Supreme Court of Kentucky.

Nov. 29, 1990.

As Corrected Jan. 11, 1991.

Phyllis A. Sower, Frankfort, for appellant.

Thomas M. Cooper, Charles C. Adams, Jr., Landrum & Shouse, Lexington, Regi-nald L. Thomas, Kentucky State University, Frankfort, for appellees.

COMBS, Justice.

Appellant, who as plaintiff prevailed against the appellees in an action for wrongful discharge, seeks to reverse so much of the opinion of the Court of Appeals as has taken from him the jury's award of accumulated sick leave amounting to $8,672.49, and punitive damages amounting to $9,500.00.

Appellant had been employed by the Kentucky State University as its Chairman of Health and Physical Education, Associate Professor, Athletic Director and Coach.

As athletic director and coach at the university, Dr. Gibson approved recruiting trips for all sports, and he recruited especially for his particular sport of track and field. He had been directed by the university president, Burse, to build a quality track and field program and to produce an indoor track team of national caliber. Apparently there were limited funds for recruiting purposes; as a result, Dr. Gibson, of necessity did some recruiting at his own expense. In order to meet NCAA requirements, Dr. Gibson had to take at least fourteen athletes to at least six meets. Consequently he had to recruit. Because of his expertise in track and field he had been invited to serve in an official capacity at the Carifta Games to be held in Barbados over the Easter weekend. (Carifta is an acronym for Carribean Junior Olympics, an organization of twenty-four Carribean nations who gather annually to compete for championships.) This planned trip was at no expense to the university. It was undisputed that Gibson's attendance at these games would provide an excellent opportunity for recruitment of outstanding athletes.

Notwithstanding the importance of this event, and being mindful of Dr. Gibson's desire to make the trip, President Burse wrote to the president of the host committee, advising that Dr. Gibson could not attend. A copy of the letter was sent to Dr. Gibson. Feeling that the matter of recruitment was his responsibility, Gibson

nevertheless made the trip. Upon his return to the University, President Burse issued an ultimatum to "resign or go before the Board of Regents." Written charges were filed by President Burse on April 19th. The Board met and considered the charges on April 25th and discharged Dr. Gibson on the same day, to be effective April 30, 1985.

Promptly thereafter the instant action was filed. After a rather lengthy trial and after the trial court had granted a partial judgment on statutory provisions, the case was submitted to the jury. A portion of the instructions was as follows:

> If you believe from the evidence that Coach Gibson's employment was terminated without good or just cause, that is, that he did not neglect his duties by taking the trip to Barbados, then you must find for Coach Gibson and set damages as determined under Instruction One.

The jury returned a verdict for Gibson, awarding compensatory damages of $17,929.46, $8,672.49 of which was for accumulated sick leave. They returned a verdict for punitive damages against appellee Burse in the amount of $9,500.00.

The Court of Appeals affirmed the compensatory damages *except* for the $8,672.49 accumulated sick leave, and reversed the punitive damages award. We affirm in part and reverse in part.

■ There is no provision in the statutes or the regulations which permits recovery of the $8,672.49 accumulated sick leave. There being no such provision, we do not have the power to establish one. As stated by the Court of Appeals in reversing this element, "sick leave is a job benefit, not direct compensation."

■ The Court of appeals reversed the punitive damages award "because no compensatory damages were awarded directly against Burse." We disagree. The verdict for compensatory damages was a joint and several verdict against all defendants. We therefore reverse the Court of Appeals on this issue and reinstate the original punitive damages award as found by the jury.

STEPHENS, C.J., and GANT, LAMBERT, LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents, and would affirm the Court of Appeals in all respects.